535 A.2d 1101

**Joseph ROMEO and Angela Romeo**

v.

**Theresa LOOKS and Sherry Rose.**

**Appeal of Theresa LOOKS.**

Superior Court of Pennsylvania.

Argued June 8, 1987.

Filed Dec. 29, 1987.

Maria M. Cook, York, for appellant.

Timothy A. Shollenberger, Harrisburg, for appellees.

Before CIRILLO, President Judge, and BROSKY, ROWLEY, WIEAND, McEWEN, OLSZEWSKI, BECK, TAMILIA and JOHNSON, JJ.

BROSKY, Judge:

This is an appeal from an order denying a Petition to open a default judgment.

Appellant contends that the lower court erred in entering the Order refusing to open the default judgment entered against her and challenges the trial court's jurisdiction on the ground that court-ordered substituted service was invalid. In the alternative, she claims that even if the court-ordered substituted service was valid so as to give the court personal jurisdiction over her, her lack of receipt of actual notice of the suit constitutes a reasonable excuse for her failure to answer the complaint, and the trial court abused its discretion in failing to open the default judgment entered against her. We affirm.

The procedural path which this matter has traveled up to the entry of the Order denying appellant's Petition to open is as follows:

On March 10, 1982, a writ of summons was issued against appellant and Sherry Rose.[1] On March 16, 1982, the Sheriff of York County, Pennsylvania, pursuant to deputization by the Sheriff of Cumberland County (where suit was instituted) served the summons upon appellant's mother, Mrs. Looks, at 625–A Colony Drive, York, Pennsylvania. On August 9, 1982, a Complaint was filed against appellant and Ms. Rose.[2] The Sheriff of York County, by Affidavit, indicated his inability to locate appellant in York County. On October 13, 1982, the Complaint was reinstated against appellant with a directive to serve her at R.D. #1, Port Treverton, Pennsylvania. However, the Sheriff of Snyder County, Pennsylvania, who was deputized to serve appellant

1. Ms. Rose is not a party to this appeal.
2. See footnote 1, *supra.*

at that address, filed an Affidavit of Service indicating that appellant could not be found there. He further noted on the return of service that appellant "is living with her mother in York, Pennsylvania." The record, however, does not inform us of the source from which (or whom) the Snyder County Sheriff obtained this latter piece of information.

On November 29, 1983, an order was entered pursuant to 42 Pa.C.S.A. § 5323(a)(5) directing service of process upon appellant by serving

(a) Secretary of the Commonwealth of Pennsylvania.

(b) Department of Motor Vehicles;

(c) Charlotte Looks, Defendant Teresa [sic] Looks' mother;

(d) Federal Kemper, Defendant Teresa [sic] Looks' insurance company, and more specifically, J.T. Tomalty, the insurance adjustor handling this claim on behalf of Defendant Teresa [sic] Looks;

(e) G. Thomas Miller, Counsel for Defendant Teresa [sic] Looks in the above-captioned action;

and further, by making publication in a newspaper with general circulation serving the area of York, Pennsylvania, and East Rutherford, New Jersey. (Order of November 29, 1983).

In support of their Motion to Direct Manner of Service pursuant to 42 Pa.C.S.A. § 5323(a)(5), appellees asserted that they had examined telephone directories in York and surrounding counties for appellant's name and address, had sent, by certified letter dated October 4, 1982, a copy of the Complaint to the Meadowlands Racetrack in East Rutherford, New Jersey but to no avail,[3] and had contacted the

3. Appellees' Motion states that the East Rutherford address was obtained from appellant's mother after a Notice to take Mrs. Looks' deposition was served upon her. However, since the record discloses no such Notice of Deposition, we must assume that the notice was never filed. We can assume, however, that some contact with Mrs. Looks must have been made because the Motion contains as an Exhibit a copy of an envelope addressed to appellant at the East

614

Postmaster of York, Pennsylvania, for information regarding appellant's current address. Finally, by a letter addressed to Federal Kemper Insurance Company, appellant's automobile insurer, appellees' counsel requested that entity to reveal the whereabouts of appellant.[4]

This Motion was subsequently amended on January 2, 1984, to delete the name of G. Thomas Miller, Esquire, because of his noninvolvement with the instant suit insofar as representation of appellant was concerned.[5]

Appellant finally contacted Federal Kemper's counsel through a series of complicated channels involving Mr. Marietta, who succeeded in making contact with appellant's mother at the latter's new Florida residence. Mrs. Looks, in turn, contacted some unknown persons in the horse racing business who were able to reach appellant. Appellant was informed by these unidentified persons to communicate with Mrs. Looks. When appellant did communicate with Mrs. Looks, the latter advised her to call Mr. Marietta. Appellant complied and requested Mr. Marietta to have counsel call her at her telephone number in Florida. Coun-

Rutherford address returned unclaimed as well as a request for publication in an East Rutherford, New Jersey newspaper.

4. This letter does not appear of record. However, the Deposition of William R. Marietta indicates that he was contacted by G. Thomas Miller, a member of the law firm which employed Mr. Marietta. Mr. Miller informed Mr. Marietta that he represented appellant in connection with an accident occurring in April, 1980 and that he needed to contact appellant in order to properly defend her. (Deposition of William Marietta, 8). Although Mr. Marietta indicated that he was never directly contacted by Federal Kemper, it is evident that the law firm which employed him also represented Federal Kemper Insurance Company as is noted on the title page of the Deposition of Mr. Marietta.

5. It is evident, however, that Federal Kemper counsel did not abandon appellant's defense once appellant made contact with Mr. Marietta and Mr. Miller, as is apparent from its representation of her at the depositions of Mr. Marietta, Mr. Lamplugh, a supervisor for Federal Kemper and appellant, herself. Counsel for Federal Kemper also filed on her behalf the subject Petition to open and the instant Notice of Appeal to this Court. This is in keeping with counsel for Federal Kemper's position that the latter might once again defend her pending appellant's communication and cooperation with counsel and/or Federal Kemper (Plaintiff's (appellees') Deposition Exhibit No. 1, Deposition of Theresa Looks, hereinafter referred to as "Looks' Deposition").

sel, according to Mr. Marietta, did call appellant (Looks' Deposition, 17–18; Deposition of William R. Marietta, 16–20). Counsel then filed the subject Petition to open on behalf of appellant which was subsequently denied. This appeal followed.

## I.

Our threshold inquiry is whether the court-ordered substituted service of process was valid, thus resulting in the trial court's obtaining personal jurisdiction over the appellant. If service is found to have been valid, then it is appropriate to inquire as to whether the default judgment should be opened, i.e. whether appellant has a reasonable excuse for failing to respond to the complaint. See *Rubin v. Nowak*, 367 Pa.Super. 629, 533 A.2d 451 (1987) (if trial court determines service valid, it then has personal jurisdiction over defendant).

We determine, first, whether the trial court obtained personal jurisdiction over the appellant. 42 Pa.C.S.A. § 5323 provides in relevant part:

§ 5323. Service of process on persons outside this Commonwealth.

(a) Manner of service.—When the law of this Commonwealth authorizes service of process outside this Commonwealth, the service, when *reasonably calculated* to give actual notice may be made:

.    .    .    .    .

(5) As directed by a court.

(Emphasis supplied).

The phrase "reasonably calculated" is undefined in the Judicial Code, nor have we uncovered any appellate decision in this Commonwealth construing this term in light of § 5323. Hence, it is necessary to resort to defining this phrase in terms of its common, ordinary and approved usage. *Barasch v. Pa. Pub. Utl. Comm.*, 507 Pa. 430, 490 A.2d 806 (1985).

Webster's New Collegiate Dictionary (1980) defines the word "reasonably" as "in a reasonable manner ..."; "to a

616

fairly sufficient extent...." *Id.* at 1892. This same source defines "reasonable" as "not conflicting with reason: not absurd: not ridiculous ... being or remaining within the bounds of reason: not extreme: not excessive ... rational ... sensible...." *Id.* Webster's also provides the following definition for "calculated." "Likely—used with complementary infinitive...." *Id.* at 154.

■ Due process, reduced to its most elemental component, requires notice. The adequacy of this notice, as applied to substituted service, depends upon whether it is reasonably calculated to give the party actual notice of pending litigation. *Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940); *Noetzel v. Glasgow, Inc.*, 338 Pa.Super. 458, 487 A.2d 1372 (1985) (Wieand, J.); *Stateside Machinery Co., Ltd. v. Alperin*, 591 F.2d 234 (3d. Cir.1979); *Kittanning Coal Co. v. International Mining Co.*, 551 F.Supp. 834 (W.D.Pa.1982); *McCully–Smith Assoc., Inc. v. Armour & Co.*, 358 F.Supp. 331 (W.D.Pa.1973).

■ While *Noetzel* did not implicate § 5323(a)(5), it adopted the Third Circuit's due process analysis of the "actual notice" language as it is used in the statute.

> As long as the method of service is *reasonably certain* to notify a person, the fact that the person nevertheless fails to receive process does not invalidate the service on due process grounds.

*Noetzel*, 338 Pa.Super. at 469, 487 A.2d at 1377–78, *citing Stateside Machinery, supra.* (emphasis supplied). From this, it logically follows that service *"reasonably calculated to give actual notice"* is that which is *reasonably certain* to notify a defendant of litigation pending against him. *See Noetzel, supra. See also Kittanning Coal, supra.* Hence, if we find that the methods of substituted service here employed were reasonably calculated to give appellant actual notice of the instant suit, we can then be satisfied that process was reasonably certain to reach her. This, in turn, depends upon what is reasonable under the circumstances, considering the interests at stake and the burdens of providing notice. *Noetzel, supra.*

■  Before resort to substituted service may be had, however, a plaintiff must have demonstrated a good faith effort to locate the defendant through more direct means, *Kittanning Coal, supra,* and must comply with the provisions of the long-arm statute. *See Action Industries, Inc. v. Wiedeman,* 236 Pa.Super. 447, 346 A.2d 798 (1975); *Stateside Machinery, supra.*

The Note accompanying Pa.R.C.P. 2079, which Rule was in effect at the time of appellees' application to the trial court for substituted service pursuant to § 5323(a)(5), sets forth examples of good faith efforts to locate a defendant through regular means.

> An illustration of good faith effort to locate the whereabouts of the defendant includes (1) inquiries of postal authorities, (2) inquiries of relatives, neighbors, friends, and employers of the defendant, and (3) examinations of local telephone directories, voter registration records, local tax records, and motor vehicle records.

*See also Kittanning Coal, supra.*

> Appellant urges upon us that
>
> none of the methods ordered by the Court below had a likely chance of success. Defendant Looks was not a Pennsylvania resident, and did not carry a valid Pennsylvania drivers' license, so that service on the Secretary of the Commonwealth or the Department of Motor Vehicles would be to no avail. Neither Defendant Looks' mother, nor Federal Kemper agent J.T. Tomalty knew of Defendant Looks' whereabouts, so that service on either of them had little chance of reaching Defendant Looks. Publication of service in Pennsylvania and New Jersey newspapers had no chance of reaching Defendant Looks as she was not residing in either state. In fact, Defendant Looks was never notified of or served with the Complaint through the use of any of the ordered methods.

Appellant's Brief, p. 18.

■  We are unpersuaded by this argument. To conclude otherwise would be tantamount to engaging in a *post hoc*

analysis of appellant's purported predicament of which she, alone, was aware at the time appellees attempted the various methods of service upon her. Were we to adopt appellant's line of reasoning, we would, in effect, be rendering mere lip service to court-ordered substituted service. This we decline to do. Valid service reasonably calculated to provide appellant with actual notice of suit is not, in our view, impaired by her claimed inability to actually receive notice. The due process clause does not require more than this, see *Milliken v. Meyer, supra*, and neither do we.

■ The record before us discloses that appellees have satisfied the above suggested preconditions to requesting and obtaining court-ordered service pursuant to § 5323(a)(5). *See* appellees' Motion to Direct Manner of Service dated November 29, 1983. For example, when appellees failed to obtain a return receipt evidencing that appellant had received a copy of the Complaint sent to her certified mail at the Meadowlands Racetrack in East Rutherford, New Jersey, when the complaint had, instead, been returned to appellees' counsel with the notation "unclaimed", appellees then caused the trial court, and properly so, to order publication in a newspaper of general circulation in East Rutherford, New Jersey.

■ Similarly, when the Sheriffs of York and Snyder Counties were unable to serve appellant either in York or Port Treverton, Pennsylvania, appellees requested the trial court to order publication of their law suit in a newspaper of general circulation in York. Thus, we cannot say that the service upon appellant via newspaper publication in those two locales was not reasonably calculated to provide her with actual notice of the instant suit. *See Kittanning Coal Co., supra.* Based upon the information appellees had in their possession at the time they applied to the trial court for an order pursuant to § 5323(a)(5), either York or Port Treverton, Pennsylvania, was the place where appellant maintained her residence or had a close relative who maintained a residence there. The East Rutherford, New Jersey location was her place or former place of employ-

ment where, we can reasonably assume, her employer and/or co-workers or friends knew of her or her whereabouts.

■ Appellees' Motion for court-ordered service also requested service on the Commonwealth of Pennsylvania Department of Motor Vehicles. Since appellant owned a motor vehicle while she was in Pennsylvania and the mishap occurred with her vehicle in this Commonwealth, it was rational to assume that the Department had a current address for her and would notify her of the pending suit—again, a method of service which appellees, based upon their knowledge of appellant's habits and whereabouts at that time, were not incorrect in assuming was reasonably calculated to give appellant actual notice.

■ Service upon Federal Kemper, as appellant's motor vehicle insurer, was also proper, as it was reasonably expected that notice of the action would be transmitted to appellant. *See Snyder v. Marion,* 19 Pa.D & C 3d 352 (Adams Co.1981). Indeed, Federal Kemper did make telephone contact with appellant who was residing in Florida. The fact that Federal Kemper only succeeded after a default judgment had been entered against appellant is of no moment, since service upon Kemper was reasonably calculated and did operate to provide appellant with the statutorily and constitutionally required notice.

Based upon the foregoing and the record before us, we are satisfied that appellees demonstrated the prerequisite good faith diligence in attempting to serve appellant and that service upon her pursuant to § 5323(a)(5) was reasonably calculated to provide her with the requisite actual notice. We conclude, therefore, that the methods of service effected upon her were not rendered invalid merely because they failed to give her actual notice. Therefore, we hold that the trial court obtained personal jurisdiction over appellant by virtue of the service effected pursuant to the trial court's order of November 29, 1983.

620

## II.

Having so found the court-ordered substituted service to be valid here, we are still left to consider appellant's assertion that she did not receive actual notice of the complaint and that the judgment should be opened for that reason. We begin by noting that a Petition to open a default judgment appeals to the court's equitable powers. It is a matter of judicial discretion which an appellate court will not reverse absent an error of law or a manifest abuse of discretion. *Schultz v. Erie Ins. Exch.*, 505 Pa. 90, 477 A.2d 471 (1984); *Estate of Levy by Levy v. CNA Ins. Co.*, 338 Pa.Super. 191, 487 A.2d 919 (1985). A successful Petition to open requires proof of prompt filing after entry of the default judgment, a reasonable excuse for failing to file an answer or enter an appearance and the proffering of a defense on the merits. *Id.* Appellant asserts as to her excuse for failing to file that she did not receive actual notice of the proceedings against her.

At this juncture, we are quick to point out that this is not a case where the validity of substituted service is successfully attacked by means of a Petition to open a default judgment because a local rule of court relating to substituted service was disregarded. *See U.S. Dept. of Housing v. Dickerson*, 358 Pa.Super. 23, 516 A.2d 749 (1986). Nor is this a situation where a petitioner is asserting that service was *never attempted* on him. *See Liquid Carbonic Corp. v. Cooper & Reese, Inc.*, 272 Pa.Super. 462, 416 A.2d 549 (1979) (deposition of appellant discloses that no employee of appellant ever served; deposition of deputy sheriff who purportedly made service reveals that he did not bother, because of his haste, to check whether person served with complaint was actually connected with appellant's business, resulting in opening of default judgment due to improper service); *Johnson v. Atlas Van Lines*, 274 Pa.Super. 253, 418 A.2d 392 (1980) (district justice admits failure to send copy of process to appellant as required by predecessor long-arm statute § 8307; opening of judgment mandated because of lack of notice of suit due to failure to

properly serve appellant). Under these circumstances, distinguishable from the instant fact pattern, a court may properly and without hesitation open an erroneously entered default judgment to permit a defense to be pleaded. *Dickerson, supra; Liquid Carbonic Corp., supra.*

It is also true that a party may successfully attack in a Petition to open a default judgment lack of knowledge of a lawsuit for reasons other than the impropriety of service when, in fact, service was valid. For example, in *Donatucci v. Utterback*, 264 Pa.Super. 49, 398 A.2d 1051 (1979), a complaint was purportedly left for defendants at their residence. They were not at home at the time, did not know of the identity of the person who had accepted service and alleged that no one was in charge of their residence at that time. The Sheriff's return indicated that the complaint was served on an adult who refused to identify himself. Thus, while service was procedurally proper, defendants were unaware that any proceedings had been instituted against them. Moreover, the *Donatucci* court concluded that since the trial court had decided the Petition without the taking of depositions or presentation of oral argument pursuant to Pa.R.C.P. 209, defendants should be entitled to offer evidence of their lack of knowledge of the suit.

Similarly, in *Maurice Goldstein, Inc. v. Margolin*, 248 Pa.Super. 162, 374 A.2d 1369 (1977), upon which *Donatucci* relies, service, again procedurally correct, was purportedly made upon defendant by serving the apartment house manager who, in turn, allegedly failed to give the complaint to defendant. As in *Donatucci*, the *Margolin* court also concluded, in reversing the denial of defendant's Petition to open, that the action of the trial court in denying the Petition was premature. Defendant had not been given the opportunity to substantiate his claim of lack of notice because no depositions had been taken, nor had the matter been set down for oral argument pursuant to Pa.R.C.P. 209.

Finally, in *Campbell v. Heilman Homes, Inc.*, 233 Pa.Super. 366, 335 A.2d 371 (1975), also cited by the *Donatucci* court, the trial court did conduct a hearing on defendant's

Petition to open. Service there, while procedurally correct, failed to notify the defendant of the action against it. The defendant's sales manager, upon whom service of the Complaint was made, failed to follow the procedure for relaying important documents received by the sales office to the home office. The involved sales manager was not reporting for work as scheduled, leading to his ultimate discharge. It was not until his replacement examined the files in the sales office and located the Complaint that that document was forwarded to appellant's home office for attention by its attorney. The *Campbell* court, in reversing the trial court's denial of the Petition to open, noted that defendant's failure to respond to the Complaint was categorized as an unintentional omission, not unlike a clerical error, due to the inattentiveness or neglect of an employee.

Thus, the scenarios delineated in the three above-cited cases are distinguishable from the procedural posture of the instant one. The *Donatucci* and *Margolin* courts held that the records in each case were not ripe to support the trial judges' assessment of defendants' failure to excuse the delay in not responding to the respective plaintiffs' complaints because defendants there were not accorded the opportunity to prove their claims of excusable delay by either the taking of depositions or presentation of oral argument on Petition and Answer pursuant to Pa.R.C.P. 209. The denials of the Petitions to open in those cases were reversed to permit further development of the record by utilizing one of the methods set forth in Rule 209. Instantly, appellant's deposition was taken, at which time she was afforded the opportunity to substantiate the allegations of her Petition.

The matter *sub judice* is also inapposite to the *Campbell* case since nowhere in the record do we find any indication that appellant was not informed or did not receive notice because of neglect, omission or oversight. Her insurer, Federal Kemper, made every diligent effort possible to locate her. (*See,* generally, Deposition of William R. Marietta). Mr. Marietta also indicated that Mrs. Looks was

anticipating hearing from appellant and did finally succeed in establishing contact with her, thus leading to appellant's phone call to Mr. Marietta. (*Id.*)

Moreover, in none of those cases was service effectuated pursuant to § 5323(a)(5). Instead, process was served by direct means without the aid of the trial court. However, since court-ordered substituted service implicates, by its very nature, a less direct method of service, process can only be deemed *reasonably* certain to reach a defendant. This is because service pursuant to § 5323(a) may be effectuated only after a plaintiff has exhibited to the satisfaction of the trial court that the more direct, traditional methods of service have failed. By serving persons (friends, relatives, employers, former employers, co-workers or former co-workers) other than an elusive defendant, a hopeful plaintiff can only *reasonably* assume that the person whom he is suing will contact that friend, relative, employer or co-worker, or, as in the instant case, the insurance carrier or *vice versa.*

Appellant admitted being in each locale where substituted service was ordered to be made. But, according to her testimony, she only happened to have moved away from each locale just before service of the Complaint was attempted on her [6] (*see, generally,* Looks' Deposition). She also indicated that her mother had moved from the York, Pennsylvania address in approximately April, 1982 (Looks' Deposition 51), thus implicating that she (appellant) could not have received mail or process there at the time service would have been made upon her mother as ordered by the trial court on November 29, 1983.

In *American Express Co. v. Burgis,* 328 Pa.Super. 167, 476 A.2d 944 (1984), we held that when evidence is premised solely upon deposition testimony, this Court may reevaluate that evidence to determine if the trial court's decision is supported by the record. The holding of that case appears in the context of determining that a Sheriff's return indicat-

---

6. Appellant's experiences in this regard relate to service attempted on her through traditional, direct means as well as the court-ordered substituted service.

ing that the deputy had served an adult female at defendant's residence who refused to identify herself was conclusive of service. The court went on to conduct an independent examination of the deposition of defendant who stated that he was away at the time of service, that he lived alone, that his mother had a key to his residence but that he did not think she would have been there on that day because she may have been working, that he never received notice from the Prothonotary that a judgment had been entered against him, never received notice of intent to seek a default judgment and could not remember exactly when he received a letter from a legal aid society advising him of his legal predicament. The court there, after making an assessment of defendant's deposition testimony, determined that defendant was indeed served as the Sheriff's return had indicated that he was.

■ While factually and procedurally different from the case at bar, nevertheless, we find *American Express* instructive. Appellant's proffer of excuse for not timely responding to suit was based *solely* upon her *deposition* testimony.

> [T]he lower court's Order ... is premised upon record [deposition] evidence, i.e., *no credibility determination or weight to be attached to a witness' testimony was required inasmuch as no witnesses testified before the trier of fact.* Therefore, since the finding of fact ... was simply a deduction from other facts and the ultimate fact in question is purely a result of reasoning, this Court may draw its own inferences and arrive at its own conclusions from the facts established. [citation omitted]

*Id.*, 328 Pa.Superior Ct. at 172, 476 A.2d at 947; emphasis supplied.

■ The above-cited rationale is equally applicable here. Having so determined, we now proceed to analyze appellant's deposition to consider whether the trial court abused its discretion in finding that appellant had not proffered a reasonable excuse for failing to answer the complaint. Our assessment leads us to the unqualified conclusion that the trial court did not abuse its discretion.

First, appellant admits in her deposition that she was aware that her car had been involved in an accident and that a claim against her was being made (Looks' Deposition 23–24). She and her mother both knew of the damage to the former's automobile (*Id.* 35), and at the time the accident was reported, appellant gave the investigating police officer her home address at Port Treverton (*Id.* 36). Moreover, her testimony concerning contact with her mother from 1980 until 1984 is contradictory. She initially asserted that she had no contact with Mrs. Looks during this period (*Id.* 15). Later, she indicated that she contacted Mrs. Looks in the Summer of 1982 (*Id.* 32) and thereafter at least every six months (*Id.* 33). She further stated that she knew that Mrs. Looks was in Florida since at least the Summer of 1982. (*Id.* 39).

We recognize that these contacts and the reporting of the accident to the police, standing alone, are insufficient to provide a basis for concluding that appellant actually knew of the pending lawsuit without the aid of court-ordered service. We consider especially significant, however, the fact that when Mr. Marietta contacted Mrs. Looks at her residence in Florida, the latter apparently had no difficulty reaching people in appellant's business who knew where appellant could be found. Based upon information from these persons, appellant then called her mother who informed her of the necessity to contact Mr. Marietta. (*Id.* 17). Appellant's deposition reveals the following:

Q How did you know to contact Mr. Marietta, or how did you know that someone by that name was looking for you?

A. I did not. Like I said, he contacted my mother. *My mother contacted some people that knew me in the business* and asked me to call my mother. Then my mother said that Mr. Marietta had found it advisable for me to talk to him, so I did.

(*Id.* 17–18; emphasis supplied).

From this, we find that it would be stretching the bounds of reason too far were we to conclude that Mrs. Looks did

not know of her daughter's whereabouts or, at least, could have easily ascertained her whereabouts during the entire time when service, both direct and substituted, was attempted upon appellant. We also consider it a bit too incredible that Mrs. Looks, appellant's mother, did not inform her daughter of the pending suit, either as a result of service upon Mrs. Looks, herself, or at least from her knowledge of the accident, and that personnel from Federal Kemper or its agents were attempting to reach appellant. We deem it rather significant, too, that appellant never denied being in the places where service was attempted, never denied that an accident had occurred and never denied that Federal Kemper was her insurer.

.     .     .     .     .

■ We are still bound, however, to examine the two remaining prongs of the test to determine whether the equities favor the opening of the default judgment entered here. *Provident Credit Corp. v. Young*, 300 Pa.Super. 117, 446 A.2d 257 (1982). *Accord American Express Co., supra. Provident* and its progeny remind us that each prong is not to be treated as a water-tight compartment assessed in isolation from the other parts of the test. But it would be more than difficult to imagine that the equities would favor opening a default judgment where delay in answering or otherwise pleading to a complaint has not been satisfactorily explained. Thus, where as here, a petitioner is unable to reasonably explain the delay to the satisfaction of the court, this may tip the balance of equities against him/her so as to obviate the necessity for considering the timeliness of filing the Petition or the merits of the proffered defense. *Cross v. 50th Ward Community Ambulance Co.*, 365 Pa.Super. 74, n. 5, 528 A.2d 1369, n. 5 (1987).

■ Here, we have no quarrel that appellant's Petition filed 16 days after entry of judgment would be timely. But we do not view this, nor her defense on the merits—that she was not driving the automobile on the day in question—per-

suasive enough [7] to tip the balance of equity in her favor, *see Provident, supra; American Express, supra*, in view of the good-faith attempts of appellees to serve her, directly and indirectly, through persons likely to know her whereabouts and at locales where she was likely to have resided or worked.

In view of the foregoing considerations, we affirm the Order of the trial court denying appellant's Petition to open the default judgment entered against her.

Order affirmed.

WIEAND, J., files a dissenting opinion in which McEWEN, J., joins.

WIEAND, Judge, dissenting:

The majority, in this case of court-ordered, substituted service, refuses to accept the defendant's lack of knowledge of the lawsuit against her as adequate excuse for failing to respond thereto and, accordingly, refuses to open a default judgment to allow the presentation of a valid defense. Because this is contrary to the equitable principles which are applicable to petitions to open default judgments, I dissent.

On April 26, 1980, an automobile owned by Theresa Looks and operated by Sherry Rose allegedly collided with another vehicle in which Joseph Romeo was riding as a passenger. An action was commenced by Romeo against Looks and Rose in Cumberland County by praecipe for writ of sum-

---

**7.** Appellant bases her defense upon the lack of an agency relationship with Sherry Rose. However, appellees do not premise their claim upon such a relationship. Rather, they allege that appellant permitted Sherry Rose to operate the former's vehicle negligently, carelessly and recklessly. Moreover, in her deposition, appellant appears to have recanted the allegation she made in her Petition to open that she knew that Sherry Rose was, indeed, operating her vehicle on the day in question. (Looks' Deposition 25–27).

We also ponder, incidentally, the whereabouts of the even more elusive Sherry Rose. If she had any independent existence at all, Ms. Rose seems to have somehow vanished into the bowels of the earth. We would consider a defense based solely upon imputation of liability to someone whose very existence and whereabouts remain a mystery to be, at best, a rather tenuous one.

mons. The summons was issued, but it was not served on Theresa Looks. Instead, it was served on her mother, Charlotte Looks, by deputized service in York County. Theresa Looks did not live with her mother. A complaint in the action was subsequently filed on August 9, 1982, but all attempts to effect personal service on Theresa Looks in York and Snyder Counties were unsuccessful. When Looks could not be found for more than a year thereafter, Romeo petitioned the trial court in Cumberland County for leave to serve Looks by substituted service under 42 Pa.C.S. § 5323(a)(5). The court granted the petition and directed that service be made by serving (1) the Secretary of the Commonwealth; (2) the Department of Motor Vehicles; (3) Charlotte Looks, the defendant's mother; (4) the defendant's insurance carrier, Federal Kemper Insurance Co., and its adjustor, J.T. Tomalty; and (5) G. Thomas Miller, Esquire, counsel for the insurance company.[1] Romeo was also ordered to publish notice of the action in newspapers of general circulation in the areas of York, Pennsylvania and East Rutherford, New Jersey. Service was effected by Romeo as ordered by the court. The same persons were later served with notice of intent to enter default judgment pursuant to Pa.R.C.P. 237.1, and the notice of intent was also advertised in the areas of York, Pennsylvania and East Rutherford, New Jersey. A default judgment was subsequently entered against Looks on November 5, 1984. Less than a week later, an investigator employed by the law firm of McNees, Wallace & Nurick, which represented Federal Kemper, was able to make contact with Looks in Florida. By telephone he told her of the lawsuit and the judgment which had been entered against her.

On November 21, 1984, Looks filed a petition to open the default judgment. She alleged that she had not received notice of the action and, therefore, had been unable to respond to it. She also alleged that she had a defense to the action in that she had not been driving her car and had

---

1. The order was subsequently amended to remove the requirement of service upon G. Thomas Miller, Esquire.

not been present at the time of the accident. Finally, she alleged that Sherry Rose, the driver, had been on her own business and had not been acting as Looks's agent. Depositions were taken in which Looks testified that she had not received actual notice of the Romeo action and had had no knowledge thereof until after judgment had been entered. The trial court found the following facts:

> Looks is a horse groom. Because of the peripatetic nature of her employment, she is rarely in one location for more than a few months at a time, though for the past ten years Florida has been her home base.

> On April 27, 1980, the day of the accident, Looks' father died. Tensions in the Looks family grew, and Looks left home. Looks was unable to be located until 1984 when the combined efforts of a private investigator, Looks' friends in the horse racing industry, and Looks' mother induced her to contact her attorneys. By this time, however, a default judgment had been entered against her.

The trial court refused to accept Looks's testimony that she had had no knowledge of the pending action and found, instead, that she should have received actual notice of the suit. Therefore, the court concluded, her default was unreasonable and could not be excused. Looks appealed.

I agree with the majority's conclusion that the substituted service ordered by the trial court was reasonably calculated to give actual notice to Looks, the defendant named in the action. The service of the complaint upon Looks, therefore, was valid. *Noetzel v. Glasgow, Inc.*, 338 Pa.Super. 458, 469, 487 A.2d 1372, 1377–1378 (1985). See: 42 Pa.C.S. § 5323(a). See also: *Stateside Machinery Co., Ltd. v. Alperin*, 591 F.2d 234, 241 (3d Cir.1979). The validity of the substituted service was not impaired by Looks's failure to receive actual notice of the pending litigation. See: *Noetzel v. Glasgow, Inc., supra* 338 Pa.Super. at 469, 487 A.2d at 1377–1378; *Action Industries, Inc. v. Wiedeman*, 236 Pa.Super. 447, 458 n. 11, 346 A.2d 798, 804 n. 11 (1975). See also: *Stateside Machinery Co., Ltd. v. Alperin, supra*

at 241; *McCully–Smith Associates, Inc. v. Armour and Co.*, 358 F.Supp. 331, 333 (W.D.Pa.1973). Whether or not Looks received actual notice of the pending litigation, therefore, the default judgment was valid and was not subject to being stricken.

The fact that the substituted service directed by the court was reasonably calculated to give notice of the pending litigation, however, did not render the judgment immune from a petition to open the default judgment. Valid service does not conclusively show, without more, that the defendant had actual knowledge of the suit. See: *Provident Credit Corp. v. Young*, 300 Pa.Super. 117, 125, 446 A.2d 257, 261 (1982). Thus, "even where proper service is found, a reasonable excuse for the default may still exist and ... that determination must be made in conjunction with an examination of the other requirements of the tripartite test." *American Express Co. v. Burgis*, 328 Pa.Super. 167, 181, 476 A.2d 944, 951 (1984) (Brosky, J. Concurring).

A petition to open a default judgment is addressed to the equitable powers of the court and is a matter of judicial discretion. *Schultz v. Erie Insurance Exchange*, 505 Pa. 90, 93, 477 A.2d 471, 472 (1984). Ordinarily, three factors must coalesce before a default judgment can be opened: "(1) the petition to open must be promptly filed; (2) the failure to appear or file a timely answer must be excused; and (3) the party seeking to open the judgment must show a meritorious defense." *McCoy v. Public Acceptance Corp.*, 451 Pa. 495, 498, 305 A.2d 698, 700 (1973). However,

a court should not blinder itself and examine each part [of the tripartite test] as though it were a water-tight compartment, to be evaluated in isolation from other aspects of the case. Instead the court should consider each part in light of all the circumstances and equities of the case. Only in that way can a chancellor act as a court of conscience.

*Provident Credit Corp. v. Young, supra* 300 Pa.Super. at 131, 446 A.2d at 264. Moreover, the rules authorizing a default judgment were not meant to allow a plaintiff to

secure a judgment without the attendant difficulties of litigation, but rather were aimed at preventing a dilatory defendant from impeding the plaintiff's efforts to establish a claim. *Raymond J. Brusco Funeral Home v. Sicilia*, 277 Pa.Super. 115, 123, 419 A.2d 688, 692 (1980). Nevertheless, a trial court's refusal to open a default judgment will not be reversed absent an error of law or a clear, manifest abuse of discretion. *Balk v. Ford Motor Co.*, 446 Pa. 137, 140, 285 A.2d 128, 131 (1971).

That Looks's petition to open the judgment was promptly filed is without question in this appeal. The petition was filed only sixteen days after the default judgment had been entered, and ten days after appellant was contacted by the law firm's investigator. Appellant has also alleged the rather compelling defense, if proved, that her car was being driven by another person, not her agent, at the time of the accident. The remaining issue and the one causing the controversy in the trial court is whether appellant offered a reasonable excuse for her failure to appear and file a timely answer to the complaint.

The law is clear in this and other jurisdictions that "although service of process may be good, nevertheless, a person may assert lack of knowledge of the suit for reasons other than improper service in seeking to have a default judgment opened." *Donatucci v. Utterback*, 264 Pa.Super. 49, 52, 398 A.2d 1051, 1052 (1979). See also: *Brown v. The Great Atlantic & Pacific Tea Co.*, 314 Pa.Super. 78, 81, 460 A.2d 773, 775 (1983) (absence of actual notice that a complaint has been filed sufficient to require the opening of default judgment); *Provident Credit Corp. v. Young, supra*, 300 Pa.Super. at 125, 446 A.2d at 261 (valid return of service does not invariably demonstrate actual knowledge of suit); *Maurice Goldstein Co., Inc. v. Margolin*, 248 Pa.Super. 162, 165, 374 A.2d 1369, 1371 (1977) (proof of service does not preclude a defendant from proving lack of notice).

In *Donatucci v. Utterback, supra,* a default judgment was entered against defendants who had failed to respond

632

to the plaintiff's complaint. The defendants filed a petition to open the judgment, arguing that although "the sheriff's return of service of the complaint was regular on its face," they "had no notice of the action until they were advised by their attorney that judgment had been entered against them." *Id.*, 249 Pa.Superior Ct. at 51, 398 A.2d at 1052. Because the defendants admitted the validity of the service, the trial court found that the default could not be excused by a failure to receive actual notice and denied the requested relief. On appeal, this Court reversed. Because the trial court had decided the case "solely on the basis that good service was admitted," the Superior Court remanded to afford the defendants "an opportunity to offer evidence of lack of knowledge of the suit in order to establish the reason for their failure to file an answer to the complaint within the period of time allowed for that purpose." *Id.* 264 Pa.Super. at 52, 398 A.2d at 1052. Although *Donatucci* came before the Superior Court in a slightly different procedural posture than the instant case, the import of the *Donatucci* decision is clear. Even though service is valid, the failure to receive actual knowledge of the suit is an adequate excuse for the default.

Other jurisdictions adhere to the same principle. See, e.g., *Rossten v. Wolf*, 14 Ill.App.2d 322, 144 N.E.2d 757 (1957) (defendants' lack of knowledge of suit may excuse default, notwithstanding valid substituted service); *Fitzgerald v. Brown*, 168 Ind.App. 586, 344 N.E.2d 309 (1976) (lack of actual notice of the proceedings is sufficient to justify opening default judgment); *National Car Rental v. S & D Leasing, Inc.*, 89 Mich.App. 364, 280 N.W.2d 529 (1979) (lack of actual notice of counterclaim is sufficient to set aside default judgment entered thereon); *Graybar Electric Co., Inc. v. Rice*, 287 S.C. 518, 339 S.E.2d 883 (1986) (defendant's lack of actual knowledge of lawsuit excused default, notwithstanding valid service of process); *Plumley v. May*, 140 W.Va. 889, 87 S.E.2d 282 (1955) (Florida resident's lack of actual knowledge of lawsuit excused default, notwithstanding valid service of process made pursuant to West Virginia non-resident motorist statute).

The critical issue in the analysis, then, is whether Theresa Looks had actual knowledge of the suit commenced against her by Joseph Romeo. There is in this record no evidence whatsoever that appellant had knowledge of the litigation pending against her. She testified in depositions regarding her nomadic existence as a horse groom and said that she had not received actual notice of the suit and did not learn of it until after a default judgment had been entered against her. She said that she and her mother had had some differences and were not close, that her mother did not know where to reach her, and that, on the several occasions when she had called her mother, she was not told that a suit was pending against her.[2] Representatives of Federal Kemper also testified that appellant's whereabouts were unknown to them and that they were unable to find or contact her until after a default judgment had been entered against her. This evidence was uncontradicted. The trial court nevertheless rejected appellant's testimony and determined, without any evidence to support its finding, that appellant had had actual knowledge because her mother must have told her of the pending litigation. This finding was wholly speculative and was unsupported by any evidence. It was, in my judgment, an abuse of discretion. All the testimony was that Looks did not have actual notice or knowledge of the Romeo action. There was not one iota of evidence to the contrary.[3]

**2.** Looks also testified that Sherry Rose had had permission to use her car whenever Rose wanted it, that Rose did not tell her that the car had been in an accident, that the car had not been damaged, that she learned of a possible accident when a policeman asked to see her car, and that the policeman, after examining her car, told her that he didn't believe the car had been in an accident. Shortly thereafter, she and Sherry Rose lost touch with each other, and Looks forgot about the incident. Even if, as the trial court found, appellant knew or should have known that her car had been in an accident, it cannot be inferred therefrom that she also had knowledge that she had been sued by Romeo, whom she had never met and who was a total stranger to her.

**3.** The majority, in its zeal to sustain this default judgment, has conjured up various possibilities by which the defendant might have obtained such knowledge. In fact, however, the majority has been unable to point to any evidence whatsoever to show that appellant had

The trial court's determination that appellant's testimony was not credible was based upon an examination of her deposition testimony. The court did not have the opportunity to observe Looks as she testified, and its review of her testimony was limited to a review of the same typewritten transcript which is now before this Court. "Although a determination of credibility is in the first instance within the prerogative of the trial court, even when based upon deposition evidence, this does not foreclose an appellate court from scrutinizing the identical evidence to determine if the ruling entered is supported by the record." *American Express Co. v. Burgis, supra* 328 Pa.Super. at 172, 476 A.2d at 947. Appellate courts are not bound by findings of a trial court which are wholly lacking in evidence. Cf. *Commonwealth v. Hamlin*, 503 Pa. 210, 215, 469 A.2d 137, 139 (1983); *Commonwealth v. Hall*, 475 Pa. 482, 486, 380 A.2d 1238, 1240 (1977).

Because the record in the instant case contains no evidence that Looks had actual knowledge of the Romeo lawsuit, I would hold that her default was adequately explained and that the trial court, by refusing nevertheless to excuse it, committed an abuse of discretion. Because Looks also has a compelling defense to appellee's action and acted promptly to open the default judgment after learning of it, I would reverse the trial court and order the judgment opened to allow her to present a defense to the cause of action stated against her by Romeo.

In reaching this conclusion, I am guided in part by the wisdom of the Supreme Court's observations in *Kraynick v.*

actual notice of the litigation or that she acquired knowledge thereof at any time prior to the entry of judgment. The entire premise for denying to appellant an opportunity to defend this action, therefore, is the majority's speculation that (1) because she knew there had been an accident; and (2) because she was able to be found after a default judgment had been entered, she must have learned of the Romeo action prior to the entry of the default judgment. This reasoning, in my judgment, is not only specious but entirely speculative. It is a wholly inadequate reason for denying to appellant an opportunity to defend the action which was brought against her as a sequel to an accident in which her vehicle was involved while being operated, in her absence, by another person.

*Hertz,* 443 Pa. 105, 277 A.2d 144 (1971), where the Court said:

> In determining whether a default judgment is to be opened and a defendant let into a defense, we bear in mind two principles of the law: (a) that the entry of a judgment by default finds its authority in the law (Pa.R. C.P. §§ 1037, 1047, 1511), 12 P.S. Appendix and (b) that, even though authorized by the law, such judgments are subject to opening if equitable considerations so demand. In determining whether a judgment by default should be opened, we must ascertain whether there are present any equitable considerations in the factual posture of the case which require that we grant to a defendant against whom the judgment has been entered an opportunity to have his [or her] "day in court" and to have the cause decided upon the merits. In so doing, we act as a court of conscience.

*Id.,* 443 Pa. at 111, 277 A.2d at 147. And again:

> "The true purpose of the entry of a default is to speed the cause thereby preventing a dilatory or procrastinating defendant from impeding the plaintiff in the establishment of his claim. It is not procedure intended to furnish an advantage to the plaintiff so that a defense may be defeated or a judgment reached without the difficulty that arises from a contest by the defendant."

*Id.,* 443 Pa. at 111, 277 A.2d at 147, quoting *Coggin v. Barfield,* 150 Fla. 551, 554, 8 So.2d 9, 11 (1942).

A court of conscience, as this Court is called upon now to act, should most certainly open the default judgment in this case. The default judgment was entered against the owner of a vehicle which was alleged to have been involved in a collision at a time when the owner was not present and while her vehicle was being operated by another person for such other person's purposes. The litigation was undefended, thereby resulting in a default judgment, because the owner of the vehicle was unaware that an action had been commenced against her. I cannot imagine any scenario

636

more compelling of equitable relief than the scenario presented by the instant case.

Therefore, I dissent. I would reverse, order the default judgment opened, and remand for further proceedings.

McEWEN, J., joins.