**Edward P. CLAYMAN, et ux.**

v.

**John JUNG.**

**Civil Action No. 96–6793.**

United States District Court,
E.D. Pennsylvania.

June 13, 1997.

As Amended July 7, 1997.

Robert N. Braker, Daniels, Saltz, Monge-luzzi & Barrett, Ltd., for Plaintiffs.

## MEMORANDUM

DALZELL, District Judge.

This accident suit will serve as a vehicle to explain the rules governing alternative service of process under the Pennsylvania Rules of Civil Procedure.

In order to understand the procedural posture of this case and the lessons to be garnered regarding the shortcomings of alternative service by publication, we will rehearse our previous Orders in this matter.

*Legal Analysis*

A. *December 18, 1996 Order*

Plaintiffs Mr. and Mrs. Clayman originally petitioned the Court for an Order, pursuant to Pennsylvania Rules of Civil Procedure 404 and 430, to permit alternative service upon defendant John Jung by publication in *The Boston Globe* and *The Philadelphia Inquirer.*

Federal Rule of Civil Procedure 4(e)(1) permits service upon an individual pursuant to the procedure adopted by the state in which the federal district court sits. In Pennsylvania, service outside the Commonwealth is governed by Pa. R. of Civ. P. 404 & 430 and 42 Pa. Const. Stat. §§ 5323 & 5329(2). *See* Note Accompanying Pa. Civ. P. 404.

Rule 430(a) of the Pennsylvania Rules of Civil Procedure provides that: "[i]f service cannot be made under the applicable rule, the plaintiff may move the court for a special order directing the method of service" by, for example, publication, and a motion for such a special procedure for service must be supported by an affidavit stating "the nature and extent of the investigation made to determine the whereabouts of the defendant."

Rule 430(a) further requires the plaintiff to make a "good faith" effort to locate the defendant and effectuate service by direct means before resorting to an alternative method of service. *See First Pennsylvania Bank v. Drucker,* No. 91–842, 1991 WL 24739, at *1 (E.D.Pa. Feb. 22, 1991) (citing *Kittanning Coal Co. v. International Mining Co.,* 551 F.Supp. 834, 836 (W.D.Pa.1982)). Such a good faith effort includes, but is not limited to: (1) inquires of postal authorities including inquires in accordance with the Freedom of Information Act; (2) inquires of relatives, neighbors, friends and employers of the defendant; and (3) examinations of local telephone directories, voter registration records, local tax records, and motor vehicle records. *See* Pa. R. Civ. R. 430(a)—Note; *Deer Park Lumber, Inc. v. Major,* 384 Pa.Super. 625, 559 A.2d 941, 945 (1989) (Rule 430(a), while not providing an exhaustive list of the necessary procedure, is "at least indicative of the types of procedures contemplated by the legislature when enacting Rule 430. In essence, it provides that more than a mere paper search is required before resort can be had to the publication provisions of Rule 430(b).").

*Kittanning Coal,* 551 F.Supp. 834 (W.D.Pa.1982), illustrates what efforts satisfy the requirement of a good faith effort to locate a defendant. In that case, plaintiff sought leave from the Court for substituted service pursuant to Pa. R. Civ. P.2079 (a since-repealed rule governing substituted service on out-of-state defendant but which contained essentially the same wording as the illustration in the note accompanying Rule 430(a)). The plaintiff in *Kittanning* attempted to locate the defendant by "(1) forwarding service by certified mail to the defendant's last known address in Florida, which was returned by postal authorities with the notation that the forwarding address had expired; (2) obtaining a more recent business address, from which service of

process was returned with the notation that it was not forwardable; and (3) contacting telephone directory assistance for the Pompano Beach, Boca Raton, and West Palm areas." *Penn v. Raynor*, No. 89–553, 1989 WL 126282, at *3 (E.D.Pa. Oct. 19, 1989).

In support of their petition, the Claymans detailed the efforts they made to serve Mr. Jung personally:

● They mailed the summons and complaint in this case by certified mail, return receipt requested, and by regular mail to Mr. Jung's last known address in Massachusetts, but the Post Office returned the correspondence with the notation that the forwarding address had expired.

● In addition, because the underlying suit stemmed from a motor vehicle accident, the Claymans served process on Mr. Jung's insurance company, Metropolitan Property and Casualty Insurance Company, which informed the Claymans that it no longer knew the whereabouts of Mr. Jung.

● The Claymans also retained Confidential Investigative Service, Inc., whose investigation into Mr. Jung's whereabouts consisted of:

1. A review of the Pennsylvania Department of Transportation—Division of Motor Vehicles Data Base.

2. An investigation with the Massachusetts Secretary of State for a last known address;

3. An investigation with the Seekonk, Massachusetts Post Office and other Post Offices.

4. Several interviews with prior neighbors pertaining to the various prior addresses which plaintiffs' investigation revealed;

5. Several interviews with claimed relatives of defendant, John Jung, which revealed no forwarding address and that Mr. Jung, "moves frequently"; and, finally,

6. A Social Security trace.

See Pls.' Mem. for Alternative Service at 4; *see also* Exh. A. to Petition for Alternative Service (detailing the extent of the search).

■ Applying the standards enunciated in *Kittanning Coal*, we found that the Claymans had made good faith efforts to directly serve Mr. Jung, thereby satisfying the requirements of Rule 430(a).[1] However, because the Claymans had requested that we authorize service upon Mr. Jung to be made by publication in *The Boston Globe* and *The Philadelphia Inquirer*, we explained that our next inquiry was determining whether publication in those newspapers was "reasonably calculated" to give actual notice to Mr. Jung as required by Rule 430(b). *See Kittanning Coal*, 551 F.Supp. at 836.

In *Romeo v. Looks*, 369 Pa.Super. 608, 535 A.2d 1101 (1987), the only reported case we were able to locate on the issue, the Superior Court upheld the trial court's exercise of personal jurisdiction over a defendant who was served by publication in two newspapers. In that case, plaintiffs published a legal notice in a "newspaper of general circulation" in East Rutherford, New Jersey, and York, Pennsylvania. *See id.* at 1106. The Court held that publication in both newspapers was reasonably calculated to give the defendant actual notice because the plaintiffs had information that York, Pennsylvania was "where the [defendant] maintained her residence or had a close relative who maintained a residence there," *id.*, and East Rutherford, New Jersey "was [defendant's] place or former place of employment where, we can reasonably assume, her employer and/or co-workers or friends knew of her or her whereabouts." *Id.* at 1106–07.

The Claymans suggested that publication in *The Boston Globe* was reasonably calculated to give Mr. Jung actual notice of this suit because it is "a newspaper of general circulation at defendant's last known address in Seekonk, Massachusetts", Mem. of Law at n. 1, and publication in *The Philadelphia Inquirer* was appropriate because it is "a newspaper of general circulation throughout the

---

1. The Claymans submitted an affidavit summarizing the nature and extent of the investigation which had been made to determine the whereabouts of Mr. Jung and the reasons why service was not and could not be made, thereby also complying with the strict pleading requirements of Rule 430(a). *See Deer Park Lumber*, 559 A.2d at 945.

Eastern District of Pennsylvania, which includes Lancaster County where the underlying motor vehicle accident occurred." *Id.*

Applying the standards enunciated in *Romeo,* we found that the Claymans had not met their burden of demonstrating that publication in *The Boston Globe* and *The Philadelphia Inquirer* was reasonably calculated to provide Mr. Jung with the requisite actual notice of this suit. The Claymans admitted they did not know if Mr. Jung still resided or worked (if he ever did) in the Seekonk, Massachusetts area, and, indeed, they had been told by "relatives" of the defendant that he "moves frequently." In addition, we noted that Seekonk, Massachusetts is much closer to Providence, Rhode Island, than to Boston. Finally, we held that the Claymans had not presented any information to suggest that Mr. Jung resided, worked, or had any connection to the Lancaster area such that publication in *The Philadelphia Inquirer* could reasonably be excepted to give him actual notice. *See Romeo,* 535 A.2d at 1105 ("Due process, reduced to its most elemental component, requires notice.").

Accordingly, we denied the Claymans' motion to allow alternative service upon Mr. Jung by publication in *The Boston Globe* and *The Philadelphia Inquirer* pursuant to Pennsylvania Rule of Civil Procedure 430. *See* Order of December 18, 1996 at ¶ (a). In that same Order, we placed this case in the Court's Civil Suspense File, and directed the Claymans to serve Mr. Jung by June 20, 1997, or show cause why this action should not be dismissed for failure to prosecute. *See id.* at ¶¶ 2–3.

### B. *January 13, 1997 Order*

■ In an effort to remedy the deficiencies we noted in our Order of December 18, 1996, the Claymans then proposed to serve Mr. Jung by publishing a legal notice in *USA Today* (worldwide edition), *The New York Times, The Providence Journal–Bulletin, The Seekonk Star,* as well as *The Boston Globe,* and *The Philadelphia Inquirer.* They claimed that the combined circulation of these newspapers, which totals several million daily readers, was reasonably calculated to give Mr. Jung actual notice of this action

because "[p]laintiffs submit that based upon their investigator's report that they can reasonably assume that defendant, John Jung, still resides in Seekonk, Massachusetts, or another town in New England and at the very least, have no reason to believe that he resides outside of the United States." Pls.' Mot. at 4.

We found that the Claymans had, in fact, failed to satisfy Rule 430(b)'s requirement that publication must be reasonably calculated to give actual notice to a defendant of the pending suit. Merely because the proposed newspapers are widely circulated, we held, did not satisfy the requirements of Rule 430(b), as interpreted by *Romeo, supra.*

We noted that the Claymans' bald assertion that there was no reason to believe that Mr. Jung resides outside the United States did not allow them to end-run the requirements of Rule 430(b) by proposing that publication in national newspapers would give Mr. Jung notice of this suit. We illustrated the point as follows:

> We have no doubt, for example, that *El País* of Madrid, Spain has a healthy circulation, and we have no information that the defendant is *not* in Spain, but that does not mean that publication in *El País* is reasonably calculated to give the defendant actual notice of an action pending in the Eastern District of Pennsylvania.

In short, while we were mindful of the fact that failure to serve Mr. Jung in a timely manner might deprive the Claymans of relief in this case, we denied their motion because at bottom they had *no* specific information as to where Mr. Jung resided or worked, such that we could find, with the requisite degree of certainty, that publication in any of the newspapers the Claymans proposed would give Mr. Jung actual notice of this action.

### C. *The Present Motion*

■ The Claymans filed the instant motion yesterday, seeking a two month enlargement of time within which to serve the still elusive Mr. Jung. In their motion, plaintiffs detail the efforts they have made since our December 18, 1996 Order to locate and serve Mr. Jung:

On June 9, 1997, defendant, John Jung's ex-wife, [Ms.] Jung, was finally located at an address of [street address], Leola, Pennsylvania, and the undersigned counsel for plaintiffs spoke directly to her and she advised plaintiff's counsel of the following:

Defendant, John Jung, presently resides on [name of street] in Attleboro, Massachusetts. His telephone number is [telephone number]. He lives with his brother ... with whom he performs carpentry work. Mr. Jung is 5'11" tall, has brown hair, is thin and is 35 years old. [Ms.] Jung was married to John Jung from 1985 through 1991, divorced him in 1992.... [Ms.] Jung does not know the street address on [name of street] where Mr. Jung resides and has not spoken to him for a couple of weeks and does not believe that defendant, John Jung, will provide her with his street address.

Plaintiff's counsel, by and through their investigators at Gill and Associates, Inc., are attempting to ascertain the street address on [name of street] where defendant, John Jung, presently resides so that they can make service upon him, but have not been successful obtaining the street address by telephoning the number given to plaintiffs' counsel and have been advised by Directory Assistance that Mr. Jung's address is non-published and would not provide plaintiff's counsel with the street address.

Plaintiffs have issued a Subpoena to the phone company to ascertain the street address for Mr. Jung and await a response.

Pls.' Petition to Enlarge the Time to Serve, at ¶¶ 3–5.

Since our Order of December 18, 1996, the Claymans have obviously engaged in the type of good faith investigative efforts the Pennsylvania Rules of Civil Procedure demand so as to assure that Mr. Jung has actual notice of this case. Rather than merely alleging that Mr. Jung's last known address was in Seekonk, Massachusetts, the Claymans now have competent evidence that Mr. Jung lives in Attleboro, Massachusetts on a known street. Rather than having no specific information regarding where Mr. Jung worked, the Claymans now have reliable information about his employment and fellow employee. In short, in place of a fond hope that publication in a variety of newspapers may give Mr. Jung actual notice of this case, the Claymans now stand in a position where it appears likely that they will be able to serve the summons and complaint in this matter upon Mr. Jung *personally*.

Under the Federal Rules of Civil Procedure and the relevant caselaw, the party initiating suit bears the burden of giving the defendant actual notice of an action. There is, at last, the likelihood that the Claymans may now be able to carry that burden in this case.

In sum, we are satisfied that the nature and extent of the Claymans' investigation to determine the whereabouts of Mr. Jung constitutes the type of good faith effort the Pennsylvania Rules of Civil Procedure contemplates, such that plaintiffs are entitled to a sixty day extension in which to attempt to serve Mr. Jung personally.[2]

An appropriate Order follows.

### MEMORANDUM

AND NOW, this 13th day of June, 1997, upon consideration of plaintiffs' petition to enlarge the time period to make service upon the defendant, and in accordance with the accompanying Memorandum, it is hereby ORDERED that:

1. The motion is GRANTED; and

2. If plaintiffs fail to serve defendant within sixty days of this Order, plaintiffs shall, on August 15, 1997, show cause why

---

2. Since the entry of this Memorandum and Order on June 13, 1997, the Claymans personally served Mr. Jung with process, in Attleboro, Massachusetts.

For the curious we quote, in relevant part, from the process server's affidavit:

On June 16, 1997, at two separate times, I traveled to the Jung residence located at [name of street] in Attleboro, MA.

On my second visit to this reported residence, after a brief conversation with a male, this subject then identified himself as John Jung.

Mr. Jung was noticeably upset and tore up the first copy of the summons which was handed to him. I then handed him a second copy, which he expected [sic] and stated, 'How the hell did you find me here?....'

this action should not be dismissed for failure to prosecute.