IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia          :
                                 :
             v.             : No. 40 C.D. 2023
                                 : Submitted: February 4, 2025
1531 Napa, LLC,          :
               Appellant   :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY JUDGE WOJCIK             FILED: March 6, 2025


1531 Napa, LLC (Napa) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) entered on December 12, 2022, denying with prejudice Napa's "Petition to Open Default Judgment" (Petition to Open). For the reasons that follow, we affirm.

## BACKGROUND
## <u>NOTICE OF VIOLATION NUMBER 641271</u>

At all times relevant to this litigation, Napa was the owner of property located at 1531 South Napa Street, Philadelphia, Pennsylvania (Property). On August 22, 2018, the City of Philadelphia (City), through its Department of Licenses and Inspections (Department), commenced an action against Napa seeking an order and permanent injunction for alleged violations of the Philadelphia Property

Maintenance Code (Property Maintenance Code or Code).[1]  Complaint, 8/22/18, Original Record (O.R.) at No. 0001.  The Complaint alleged that in June of 2018, Napa obtained a rental license for the Property.  Complaint, ¶5.  The Complaint further alleged that on June 26, 2018, the Department inspected the Property and determined that it was in violation of the Property Maintenance Code.  Complaint, ¶7, Exhibit B.  The following day, the Department issued an "Initial Notice of Violation and Order" at Case No. 641271 (Notice of Violation 271).  Notice of Violation 271 was sent to Napa's business address: 1429 Walnut Street, Suite 1202, Philadelphia, Pennsylvania (Walnut Street address).  Complaint, Exhibit B.  Notice of Violation 271 set forth violations related to the exterior condition of the premises (Property Maintenance Code §302.1) and the hazardous condition of the plumbing system due to a broken sewer line and a raw sewage flood in the basement (Property Maintenance Code §504.3).  *Id.*  Notice of Violation 271 advised that a re-inspection would be conducted on or about July 4, 2018, to determine compliance.  Notice of Violation 271 also indicated that Napa had a "right to appeal these violations within thirty (30) days of the Date of this Notice . . . ."  *Id.*  Finally, Notice of Violation 271 warned that "Fines shall be imposed from the date of this notice and shall be assessed in the amount of $150 to $2000 per violation each and every day the violation remains uncorrected."  *Id.*

The Complaint alleged that on July 9, 2018, the Department re-inspected the Property and discovered that the violations had not been corrected.  Complaint, ¶9.  Consequently, on July 11, 2018, the Department served a "Final

---

[1] The Philadelphia Property Maintenance Code, also referred to as Subcode "PM," is located within Title 4 (The Philadelphia Building Construction and Occupancy Code) of the Philadelphia Code of General Ordinances, Phila., Pa., Code §§1-101 to 22-1409 (2024). *See* City of Phila., Pa., Property Maintenance Code §§101.1-906 (2024).

Warning" (Final Warning 271). Complaint, ¶11. Final Warning 271 stated that because of Napa's failure to correct the violations, the Department was required "to pursue additional enforcement action against [Napa] as provided by law[]" and that "[f]ines shall be imposed from 06/27/2018 and shall be assessed in the amount of $150 to $2000 per violation each and every day the violation[s] remain uncorrected." Complaint, Exhibit C.

The Complaint noted that Napa did not appeal Notice of Violation 271 and asserted that Napa was therefore precluded from challenging it. Complaint, ¶¶12-13 (citing *Gans v. City of Philadelphia*, 403 A.2d 168, 171 (Pa. Cmwlth. 1979)). The Complaint alleged that the violations set forth in Notice of Violation 271 constituted a nuisance per se, endangering the health, welfare, and safety of the public. *Id.*, ¶14. Finally, the Complaint indicated that to date, the violations set forth in Notice of Violation 271 had not been corrected. *Id.*, ¶10.[2]

## PROCEEDINGS BEFORE THE TRIAL COURT

Count I of the Complaint sought a permanent injunction directing Napa to immediately correct all Code violations and permitting the City to abate and/or inspect the Property to determine whether Napa had made the corrections. Complaint, ¶24. Count II of the Complaint sought statutory fines in the amount of $18,000 for Notice of Violation 271. *Id.*, ¶28. Count III of the Complaint sought re-inspection fees for each subsequent re-inspection of the Property while it remained out of compliance. *Id.*, ¶¶31-35.

---

[2] The Complaint also asserted that a second Notice of Violation was issued following the June 26, 2018 inspection of the Property. The second notice of violation was issued on June 28, 2018, at Case No. 641431 (Notice of Violation 431). Complaint, ¶15. Notice of Violation 431 is not at issue in this case.

The trial court issued a Rule to Show Cause why the City should not be granted the relief it requested, and a hearing was scheduled for October 11, 2018. Rule to Show Cause, 8/23/2018, O.R. at No. 0003. Notice of the Rule to Show Cause was provided to the parties pursuant to Pennsylvania Rule of Civil Procedure 236, Pa.R.Civ.P. 236.[3] Trial Court Docket, Reproduced Record (R.R.) at 3a. The City made four attempts to serve the Complaint on Napa at the Walnut Street address but the office was closed, there was no response from the suite, and the door was locked on all attempts. A doorman at the premises informed the process server that Napa did not have set hours of operation. Affidavit of Service, 9/19/2018, O.R. at No. 0004.

The City filed a "Motion for Alternative Service Pursuant to Local Rule 430.1" (Motion for Alternative Service).[4] The trial court issued an order on September 27, 2018 (docketed on October 1, 2018), granting the Motion for Alternative Service and directing that service of process "may be made by First[-] Class Mail to [Napa], at [its Walnut Street address], as well as by posting the Complaint and Rule at the subject [Property]." Trial Court Order, 9/27/2018, O.R. at No. 0006. Pursuant to the trial court's order, the Complaint was mailed to the Walnut Street address and was posted at the Property. Affidavit of Service, 10/9/2018, O.R. at No. 0009; Affidavit of Service, 10/11/2018, O.R. at No. 0011.

---

[3] Pa.R.Civ.P. 236 is titled "Notice by Prothonotary of Entry of Order or Judgment" and requires the prothonotary to immediately give written notice of the entry of an order or judgment to each party's attorney of record or, if unrepresented, to each party, and to note on the docket the giving of such notice.

[4] The Motion for Alternative Service also seeks authorization to perfect alternative service of process pursuant to Pennsylvania Rule of Civil Procedure 430, Pa.R.Civ.P. 430, as well as Philadelphia Local Rule of Civil Procedure 430.1. Phila. Civ. R. *430.1. Local Rule 430.1 was in effect at the time of the proceedings but has since been rescinded.

By order dated October 11, 2018, the trial court continued the hearing on the Rule to Show Cause to December 6, 2018. Trial Court Order, 10/11/2018, O.R. at No. 0010. Notice of the October 11, 2018 order was provided to the parties pursuant to Pa.R.Civ.P. 236. Trial Court Docket, R.R. at 5a.

Hearing on the Rule to Show Cause was held on December 6, 2018. At the hearing, the City presented testimony and evidence. Napa did not appear. Following the hearing, the trial court issued an "Order to Comply Violations" (Order to Comply). Trial Court Order to Comply, 12/8/2018, O.R. at No. 0012. The Order to Comply held, *inter alia*, that Napa was the owner of the Property; that the Department sent Notices of Violation informing Napa of the Code violations on June 27, 2018, and July 11, 2018; that Napa failed to exhaust its administrative remedies; and that the violations were therefore deemed admitted. *Id.*, ¶¶1-3. The Order to Comply indicated that Napa had not, as of December 6, 2018, remedied the violations and that the violations were subject to a daily fine. *Id.*, ¶6. The order directed Napa to "Fully Comply All Violations Under Case [No. 271]" by January 22, 2019. *Id.*, ¶1a. The Order to Comply held that the City was entitled to an absolute fine in the amount of $72,900. *Id.*, ¶9. Finally, the Order to Comply indicated that "[a]ll fines imposed in this matter shall be entered as a judgment in favor of [the City] and against [Napa] upon submission of a praecipe to the Prothonotary at the conclusion of this action[.]" *Id.*, ¶5.

On July 10, 2019, the City filed a "Praecipe to Enter Judgment Upon Order of the Court" (Praecipe to Enter Judgment), asking for judgment in the amount of $72,900 to be entered upon Napa pursuant to the trial court's December 6, 2018 order. Praecipe to Enter Judgment, 7/10/2019, O.R. at No. 0013. The trial court then entered the judgment (Judgment) in favor of the City and against Napa in the

5

amount of $72,900 based on the trial Court's December 6, 2018 order, and provided notice pursuant to Pa.R.Civ.P. 236. Trial Court Docket, R.R. at 6a. The City also posted the Praecipe to Enter Judgment at the Property. Affidavit of Service, 7/24/2019, O.R. at No. 0014.

On November 16, 2022, Napa filed the Petition to Open. Petition to Open, 11/16/2022, R.R. at 10a. The Petition to Open cited the case of *Duckson v. Wee Wheelers, Inc.*, 620 A.2d 1206 (Pa. Super. 1993), for the proposition that a default judgment may be opened when the movant promptly files a petition to open, provides a meritorious defense, and offers a legitimate excuse for the delay that caused the default. Petition to Open, ¶15.

The Petition to Open alleged that Napa had a legitimate excuse for the delay in filing a responsive pleading because it did not receive a copy of the City's Complaint in the mail, nor did it see the Complaint posted at the Property. Petition to Open, ¶7. The Petition to Open also asserted that Napa did not receive notice of the December 6, 2018 hearing and, consequently, did not appear at it. *Id.*, ¶9. Furthermore, Napa claimed it did not receive a copy of the Praecipe to Enter Judgment or see it posted on the Property. *Id.*, ¶11. The Petition to Open stated that "[w]ithin the last few months, [Napa] learned for the first time that the Judgment had been entered against it in this case." *Id.*, ¶12. Napa claimed that the Judgment was entered against it despite the fact that it "did not receive notice of the Complaint or any other filings, Orders, or the Judgment entered in this case." *Id.*, ¶13.

With regard to the alleged lack of service, Napa asserted that although it owned the Property, it "did not visit the Property every day as it was a rental property managed by a property manager, and [Napa] believes the Complaint and Judgment were removed by a third party after posting." Petition to Open, ¶19. Napa

6

further asserted that it did not receive the Complaint or the Rule to Show Cause in the mail and opined that "it [sic] may have been mailed to an incorrect or incomplete address given that [Napa] did not receive the same." *Id.*, ¶20.

Napa also asserted that the Petition to Open was timely because it was filed "soon after" Napa learned of the Judgment. Petition to Open, ¶23. Napa stated:

> [A]fter learning of the Judgment a few months ago, [Napa] reached out to [the City] several times through several individuals in an attempt to understand why a Judgment had been entered against [Napa] and to resolve any issues relating to the Judgment. When [the City] refused to meaningfully discuss the matter with [Napa], [Napa] filed this [Petition to Open].

*Id.*

Finally, Napa asserted that it had a meritorious defense on the merits, stating:

> [T]he violations and fines that are the subject of the Judgment were improperly assessed against [Napa] as [Napa] did not cause certain of the violations identified in [Notice of Violation 271]. In particular, as set forth in the Answer and New Matter [attached to the Petition to Open], neither [Napa] nor its tenant placed trash in front of or in the rear of the house. To the extent a violation occurred relating to trash at the Property (which [Napa] disputes), it would have been caused by the owner of the neighboring property, who occasionally placed trash at the Property without [Napa's] consent while the neighboring property was being renovated. With regard to the other two violations (relating to sewer line repairs and flooding in the basement), [Napa] immediately took steps to and ultimately cured the alleged violations as more fully set forth in the Answer and New Matter; indeed[,] the permit issued by [the City] to replace the curb trap at the Property was issued in October 2018. Thus, the amount of the fines assessed against [Napa] for the alleged violations is excessive given the repairs were completed before the

7

> entry of the December 6, 2018 Order, and the sewer line
> has been in good working condition since shortly after [the
> City] issued the Notice of Violation.

*Id.*, ¶14.

The City filed a response, denying the averments in the Petition to Open. *See* City's Response to Petition to Open, 12/5/2022, R.R. at 40a. Of note, the City emphasized that Napa admitted the Walnut Street address was a valid mailing address, that the City made a number of attempts to serve Napa with the Complaint at the Walnut Street address, and that the City was eventually forced to file the Motion for Alternative Service. *Id.*, ¶¶3-4. Furthermore, the City observed, affidavits of service reflect that the City complied with the trial court's October 1, 2018 alternative service order. *Id.*, ¶6. The City asserted that Napa's denial of receipt of the Complaint was not sufficient to overcome the mailbox rule's presumption of receipt. *Id.*, ¶7 (citing *Murphy v. Murphy*, 988 A.2d 703, 709 (Pa. Super. 2010)). Moreover, the City stressed, Napa could not validly challenge the Notice of Violation due to its failure to exhaust administrative remedies. *Id.*, ¶14. Finally, the City disagreed that the Judgment entered pursuant to its Praecipe to Enter Judgment was a default judgment; rather, the City asserted, "[o]n its face, it is clearly a [j]udgment on Court Order arising from the December 6, 2018 Final Order which was issued after a full and fair hearing on the merits. . . . Therefore, the law pertaining to opening default judgments is inapplicable here." *Id.*, ¶15.

By order dated December 10, 2022 (docketed on December 12, 2022), the trial court denied Napa's Petition to Open with prejudice. Trial Court Order, 12/10/2022, R.R. at 138a. Napa filed a notice of appeal, and the trial court ordered Napa to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b). Trial Court

Order, 1/13/2023, O.R. at 0020. Napa complied with the trial court's order and on March 7, 2023, the trial court issued its opinion pursuant to Pa.R.A.P. 1925(a). Trial Court Pa.R.A.P. 1925(a) Opinion (Trial Court Opinion), 3/7/2023, O.R. No. 0022.

## TRIAL COURT'S OPINION

The trial court's opinion proceeds on the premise that the judgment entered in this case was indeed a default judgment. Citing the case of *Cintas Corp. v. Lee's Cleaning Service, Inc.*, 700 A.2d 915, 919 (Pa. 1997), the opinion echoes that, to be successful, a petition to open default "must meet the following test: (1) the petition to open must be promptly filed; (2) the failure to appear or file a timely answer must be excused; and (3) the party seeking to open the judgment must show a meritorious defense." Trial Court Opinion at 9.

Addressing these criteria in turn, the trial court held that Napa was not entitled to relief. First, the trial court noted that Napa did not establish there was a failure of proper service in the underlying code enforcement matter. The trial court recognized that Napa did not participate in the original hearing "where ample and credible evidence of service on [Napa] was established." Trial Court Opinion at 9. Further, the trial court observed, while Napa's Petition to Open asserted faulty service, it "failed to provide any details or evidence to controvert the proof of service evidence provided by the [City] during the hearing in question." *Id.* The trial court emphasized that while Napa asserted that service was not made, it "offer[ed] no substantive claim as to why or how service failed." *Id.*

The trial court also determined that Napa did not timely file the Petition to Open. The trial court noted that upon review of the averments in the Petition to Open, it was "impossible to determine the date that [Napa] at least acknowledges

9

that [it] received notice of the underlying proceedings." Trial Court Opinion at 9. The trial court highlighted, however, that "114 days elapse[d] from the date [Napa] wrote an e[]mail to the [City] acknowledging the *Judgment* until the time that [it] filed the instant [Petition to Open]." *Id.* (emphasis in original).[5] "In cases where the appellate courts have found a 'prompt' and timely filing of the petition to open default judgment," the trial court wrote, "the period of delay has normally been less than one month." *Id.* (citing *U.S. Bank N.A. v. Mallory*, 982 A.2d 986, 995 (Pa. Super. 2009)).

Finally, the trial court concluded that Napa had not established a meritorious defense. "[D]espite the claim that another had placed the trash at the subject premises," the trial court wrote, "a property owner remains responsible for maintaining a property in compliance with [the Code] regardless of whether a third party placed the trash on the property." Trial Court Opinion at 10. As for Napa's contention that it cured the sewer and sewage issues, the trial court emphasized that following a full and fair hearing on December 6, 2018, it found that the issues had *not* been resolved. If Napa wished to challenge the violations and fines, it should

---

[5] The trial court is referring to an email that is attached as Exhibit R-ll to the City's Response to the Petition to Open. The July 25, 2022 email is from Timothy Lebold to the City's Code Enforcement Division. The email states:

> Good afternoon:
>
> A mystery judgment showed up on my property (1531 South Napa Street) that I need to have addressed as it is rather large.
>
> Please call me . . . or email me at this email address.
>
> Thank you.

Response to Petition to Open, Exhibit R-11, R.R. at 132a.

have utilized the administrative relief available to it by pursuing an administrative appeal. *Id.* Although Notice of Violation 271 informed Napa of its right to such relief, Napa failed to avail itself of it. *Id.*

## DISCUSSION

Preliminarily, we must address whether the trial court had jurisdiction over Napa in the underlying proceedings. "Service of process is a mechanism by which a court obtains jurisdiction of a defendant, and therefore, the rules concerning service of process must be strictly followed." *Cintas Corp.*, 700 A.2d at 917. In the absence of valid service, "a court lacks personal jurisdiction of a defendant and is powerless to enter judgment against him or her." *Id.* at 917-98. In *Cintas*, our Supreme Court observed:

> [I]mproper service is not merely a procedural defect that can be ignored when a defendant subsequently learns of the action against him or her. . . . However, the absence of or a defect in a *return of service* does not necessarily divest a court of jurisdiction of a defendant who was properly served. . . . "[T]he fact of service is the important thing in determining jurisdiction and . . . 'proof of service may be defective or even lacking, but if the fact of service is established jurisdiction cannot be questioned.'" [*Commonwealth ex rel. McKinney v. McKinney*, 381 A.2d 453, 455 (Pa. 1977)] (quoting *Goodman v. Ancient Order of United Workmen*, [300 N.W. 624, 625] ([Minn.] 1941)).

*Id.* at 918 (citations omitted, emphasis in original).

Napa challenges the trial court's conclusion that it did not establish there was a failure of proper service in the underlying code enforcement matter, asserting that the trial court disregarded critical averments in the Petition to Open: namely, that Napa's owner did not visit the Property regularly because it was a rental property with a property manager; that Napa believed a third party removed the

11

postings from the Property after they were posted; and that Napa was never advised that the Complaint, Rule to Show Cause, or any other filings had been filed or posted on the Property. Napa maintains that the trial court's failure to consider these "excuses" constituted an abuse of discretion. Napa's Brief at 16. Per Napa, the City's attempted service in accordance with the trial court's alternative service order does not reflect actual notice to Napa that the Complaint had been filed. Napa averred that it did not receive notice of the Complaint and provided a valid explanation for why it failed to receive notice. If the trial court wished to assess Napa's credibility on this issue, it could have scheduled an evidentiary proceeding on the Petition to Open. *Id.* at 16-17.

The City counters that both it and the trial court followed the proper procedures for alternative service under Pa.R.Civ.P. 430. After making four attempts to personally serve Napa at its official corporate address, i.e., the Walnut Street address, and learning that Napa did not keep regular hours at the location, the City moved for alternate service. The City maintains it then effectuated valid service by both mailing and posting to the Property. City's Brief at 11. The City emphasizes that Napa did not specify any procedural error in the form of service; instead, Napa claims that it did not receive the mailing or see the posted Complaint. *Id.* at 12. The City argues that due process only requires that service be reasonably calculated to reach the defendant. "The fact that service may ultimately fail to reach the defendant does not invalidate the service." *Id.* (citing *Romeo v. Looks*, 535 A.2d 1101, 1105 (Pa. Super. 1987)).

The City argues that in addition to receiving constructive notice via alternative service, Napa also had actual notice of the Complaint via "the mailbox rule." City's Brief at 12. The City maintains that under the mailbox rule, proof that

12

an item was mailed raises a rebuttable presumption that the item was received. *Id.* (citing *City of Philadelphia v. Rivera*, 171 A.3d 1, 10 n.11 (Pa. Cmwlth. 2017)). Further, the presumption under the mailbox rule is not nullified solely by denying receipt of the item mailed. *Id.*

The City maintains it triggered the mailbox rule when it provided the affidavit of service stating that the Complaint had been mailed to the Walnut Street address along with the stamped United States Postal Service Form 3817. *See* Affidavit of Service, 10/11/2018, O.R. at No. 0011. The City contends that the trial court was correct when it held that Napa provided no substantive claim as to why or how this form of service failed. Because "[Napa's] mere self-serving denial of receipt was insufficient as a matter of law[,]" the City asserts that the mailbox rule conclusively establishes that Napa received the Complaint and failed to provide a reasonable excuse for failing to appear. City's Brief at 12-13.

In its reply brief, Napa retorts that while the mailbox rule presumes that a party received a document that was mailed to its address, the presumption can be rebutted. Napa asserts that it sufficiently averred that it did not receive or have notice of the Complaint. In turn, this created a factual question as to whether Napa received actual notice of the Complaint. Napa once again avers that the trial court should have held an evidentiary hearing to decide this question. Napa's Reply Brief at 1-2.

"[D]ue process, reduced to its most elemental component, requires notice." *Seamon v. Acker* (Pa. Cmwlth., No. 1216 C.D. 2011, filed July 2, 2015), slip op. at 8 (quoting *PNC Bank, N.A. v. Unknown Heirs*, 929 A.2d 219 (Pa. Super. 2007)).[6] If a party has failed to effectuate valid service resulting in another party

---

[6] Unreported memorandum opinions of this Court filed after January 15, 2008, may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate **(Footnote continued on next page…)**

13

lacking notice of the proceeding against him, "the court has no jurisdiction over the party and is powerless to enter judgment." *Id.* (citing *PNC Bank*, 929 A.2d at 228). If judgment is entered in such a scenario, the judgment is void "and constitutes a fatal defect of record." *Seamon*, slip op. at 8 (citing *Mother's Restaurant, Inc. v. Krystkiewicz*, 861 A.2d 327, 337-38 (Pa. Super. 2004)).

In *Romeo*, the Superior Court addressed the issue of whether court-ordered substituted service of process was valid and resulted in the trial court obtaining personal jurisdiction over the appellant. The facts surrounding the *Romeo* appellees' attempts to serve the appellant are complicated. Suffice it to say, the appellant moved in and out of state frequently, making it difficult for the appellees to serve the appellant. Ultimately, the trial court issued an order pursuant to Section 5323(a)(5) of the Judicial Code, 42 Pa.C.S. §5323(a)(5),[7] directing that process be served upon the appellant through the Secretary of the Commonwealth, the Department of Motor Vehicles, the appellant's mother, the appellant's insurance

---

Procedure, Pa.R.A.P. 126(b), and Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

[7] Section 5323(a)(5) of the Judicial Code addresses service of process on persons outside the Commonwealth. It provides in pertinent part:

> **(a) Manner of service**.--When the law of this Commonwealth authorizes service of process outside this Commonwealth, the service, when reasonably calculated to give actual notice, may be made:
>
> &#42; &#42; &#42; &#42;
>
> (5) As directed by the court.

42 Pa.C.S. §5323(a)(5).

company, and the appellant's counsel. The trial court also directed service via publication in a newspaper of general circulation.

The appellant in *Romeo* challenged the substituted service methods directed by the trial court, asserting that none of them had a likely chance of success. The Superior Court disagreed. The *Romeo* Court noted that in *Noetzel v. Glasgow, Inc.*, 487 A.2d 1327 (Pa. Super. 1985), a case that did not involve Section 5323 of the Judicial Code, the Superior Court adopted the Third Circuit's due process analysis of the "actual notice" language as used in the Section 5323 of the Judicial Code. The *Romeo* Court recognized that "[a]s long as the method of service is *reasonably certain* to notify a person, the fact that the person nevertheless fails to receive process does not invalidate the service on due process grounds." *Romeo*, 535 A.2d at 1105 (emphasis in original).

The *Romeo* Court further opined:

> [I]t logically follows that service "*reasonably calculated to give actual notice*" is that which is *reasonably certain* to notify a defendant of litigation pending against him. . . . Hence, if we find that the methods of substituted service here employed were reasonably calculated to give [the] appellant actual notice of the instant suit, we can then be satisfied that process was reasonably certain to reach her. This, in turn, depends on what is reasonable under the circumstances, considering the interests at stake and the burdens of proving notice.

*Romeo*, 535 A.2d at 1105 (citations omitted, emphasis in original). The *Romeo* Court proceeded to review each method of service directed by the trial court, inferring that they were proper and of a nature that it could reasonably be expected that notice of the action would be transmitted to the appellant. Ultimately, the *Romeo* Court concluded that the trial court did indeed obtain personal jurisdiction

over the appellant by virtue of the service effected pursuant to the trial court's order directing substituted service.

We reach the same conclusion here. The record reflects that after multiple unsuccessful attempts to serve Napa as set forth in the Pennsylvania Rules of Civil Procedure, the City filed its Motion for Alternative Service. The trial court granted the motion and directed the City to serve the Complaint via First-Class mail at Napa's Walnut Street address as well as by posting the Complaint and Rule to Show Cause at the Property. Although it appeared that representatives for Napa did not keep regular hours at the Walnut Street Property, it was reasonable to believe that someone from Napa would periodically appear on the premises to pick up mail and would inform Napa of the proceedings; thus, we conclude that service by First Class mail at the Walnut Street address was reasonably calculated to provide Napa notice of the City's Complaint.

The same can be said for the trial court's directive that the Complaint be posted at the Property. Because the Property was a rental unit with a property manager, it was not unreasonable to presume that either the tenant or the property manager would see the Complaint conspicuously posted on the Property and inform Napa of the proceedings. Accordingly, it is apparent that service by posting was reasonably calculated to provide Napa with the required notice.

Based on our review of the record, we are satisfied that the alternative service directed by the trial court in this case was reasonably calculated to give Napa notice of the proceedings taking place in the trial court. We hold, therefore, that the trial court obtained personal jurisdiction of Napa by virtue of the Complaint being served by First-Class mail and by posting; thus, the trial court had jurisdiction to enter the Judgment pursuant to the City's Praecipe to Enter Judgment.

16

We are similarly persuaded by the City's mailbox rule argument. It is apparent that Napa's bold denial of receipt of the Complaint is insufficient to overcome the rebuttable presumption that the Complaint was received. *See Department of Transportation, Bureau of Driver Licensing v. Grasse*, 606 A.2d 544, 545 (Pa. Cmwlth. 1991) (pursuant to the mailbox rule, proof of mailing raises a rebuttable presumption that the mailed item was received, and it is well settled that the presumption under the mailbox rule is not nullified solely by testimony denying receipt of the item mailed). Clearly, the United States Postal Service Form 3817 attached as Exhibit A to the October 11, 2018 Affidavit of Service provides proof that the City mailed the Complaint to Napa at the Walnut Street address on October 4, 2018. *See City of McKeesport v. Delmar Leasing Corp.*, 656 A.2d 180, 181 n. 3 (Pa. Cmwlth. 1995) (observing that a United States Postal Service Form 3817 can be obtained at the post office for a fee and is stamped as proof of the date of mailing). Thus, because there is proof in the record that the Complaint was mailed, we agree with the City that it was presumptively received.

Having determined that the trial court had jurisdiction over Napa in the underlying proceedings, we must next address the nature of the Judgment that Napa seeks to open. Before this Court, the City reiterates its argument that the Judgment in this case is *not a default judgment*. In making this argument, the City underscores that the Judgment was not entered pursuant to Pennsylvania Rule of Civil Procedure 237.1, Pa.R.Civ.P. 237.1, which addresses the entry of a default judgment for failure to plead. The City emphasizes that in this case, the Judgment was entered after an evidentiary hearing and court order. Furthermore, the City notes, Pa.R.Civ.P. 237.1(b)(2) specifically provides that "[t]his rule does not apply to a judgment

17

entered . . . (2) upon praecipe pursuant to an order of court . . . ." Pa.R.Civ.P. 237.1(b)(2). The City emphasizes that is precisely what occurred in this case.

"Instead," the City asserts, "the [J]udgment below was a final order in a contested action . . . ." City's Brief at 16. The City argues that Napa had a full opportunity to attend the December 6, 2018 trial court hearing and contest the violations set forth in the City's complaint. "Napa's decision to ignore this action[,]" the City stresses, "does not render the resulting [J]udgment a default." *Id.* (citing *Orie v. Stone*, 601 A.2d 1268, 1271 (Pa. Super. 1992), and *Simpson v. Allstate Insurance Co.*, 504 A.2d 335, 337 (Pa. Super. 1986)). Thus, the City concludes, the test to lift a default judgment should not apply in this case.

The City notes that "[u]nlike a judgment entered by confession or by default, which remains within the control of the court indefinitely and may be opened or vacated at any time upon proper cause shown, a judgment entered in an adverse proceeding ordinarily cannot be disturbed after [it has become final]." City's Brief at 17 (quoting *Simpson*, 504 A.2d at 337 (citation omitted)). In turn, a judgment becomes final if it is not appealed, and the Court does not modify or rescind it within 30 days. *See* 42 Pa.C.S. §5505.

The City argues that where, as in this case, a final judgment is entered following an adverse proceeding, it cannot be opened "unless there has been fraud or some other circumstance so grave or compelling to constitute 'extraordinary cause' which justifies court intervention." City's Brief at 18 (quoting *Lowery v. East Pikeland Township*, 599 A.2d 271, 274 (Pa. Cmwlth. 1991)). In turn, the City asserts that the term "extraordinary cause" "generally requires 'an oversight or act by the court, or failure of the judicial process, which operates to deny the losing party knowledge of entry of final judgment and commencement of the running of the

18

appeal period.'" *Id.* (quoting *DeMarco v. Borough of East McKeesport*, 556 A.2d 977, 979 n. 4 (Pa. Cmwlth. 1989)).

The City maintains that because Napa did not attempt to meet the standard to open a contested judgment, the issue has been waived. *See Yannone v. Town of Bloomsburg Code Appeal Board*, 218 A.3d 1002, 1010 (Pa. Cmwlth. 2019) (argument not properly developed in the appellant's brief is waived); *Perin v. Board of Supervisors of Washington Township*, 563 A.2d 576, 580 (Pa. Cmwlth. 1989) (issue or theory of relief not presented to the trial court may not be raised for the first time on appeal). Regardless, the City argues, even if Napa had preserved any argument concerning the test to open a judgment in a contested action, it failed to show any extraordinary failure of the judicial process in this case. The City emphasizes that Napa was served with the Complaint, and the trial court was "well within its discretion to disbelieve Napa's vague and speculative excuses for how these multiple notices could have all failed to reach their destination." City's Brief at 18.

Napa counters that the more stringent "extraordinary cause" standard is not applicable in this case because the proceedings were not adverse. Napa repeats its assertions that it did not have notice of the December 6, 2018 hearing and therefore did not appear at it. Furthermore, Napa notes, it is undisputed that it never entered an appearance in the case before the Judgment was entered. Napa maintains that the Judgment in this case is more akin to a judgment by default followed by an assessment of damages hearing. Finally, Napa asserts, the cases cited by the City to support its position that the "extraordinary cause" standard applies to this case are "wholly inapposite." Napa's Reply Brief at 3. In this regard, Napa emphasizes that unlike the instant action, the defendants in both *Orie* and *Simpson* appeared in the

proceedings prior to the entry of judgment; thus, the judgments were not entered by default.

Based on our review of the record, the parties' briefs, and the case law cited therein, we do not believe the Judgment in this case is a default judgment. Markedly, the Judgment has none of the hallmarks of a default judgment. As the City correctly points out, the Judgment was not entered pursuant to the default judgment provisions set forth in Pa.R.Civ.P. 237.1. In fact, it is apparent that Rule 237.1 does not even apply to the factual scenario presented in this case as the Judgment was entered pursuant to a court order. *See* Pa.R.Civ.P. 237.1(b)(2).

Here, the record reflects that the City took numerous, exhaustive steps to ensure that Napa was served with the Complaint and had notice of the proceedings. Furthermore, to the extent the trial court forwarded orders to Napa pursuant to Pa.R.Civ.P. 236, there is no indication in the record that any of the rulings were returned to the trial court as undeliverable. Under the circumstances, Napa's claims that it had no notice of these proceedings until sometime in 2022 begs credulity.

With that said, Napa's recalcitrance in responding to the filings and orders in this case does not somehow morph the Judgment at issue into a default judgment, thereby allowing Napa to take advantage of a lesser burden to open it. The trial court was satisfied that Napa received constructive and actual notice of the City's Complaint and appropriately held the hearing on the Rule to Show Cause, thereby allowing the City to make its case. *Cf. Zappacosta v. McAvoy*, 325 A.3d 782, 788 (Pa. Super. 2024) (holding Pennsylvania Rule of Civil Procedure 218, Pa.R.Civ.P. 218, does not allow a trial court to enter judgment against a defendant for failure to appear without requiring the plaintiff to prove his case). The resulting

20

Order to Comply and Judgment were not the result of Napa's default but were issued following the trial court's consideration of the testimony and evidence presented by the City.

In this regard, Napa's absence from the proceedings does not persuade us the proceedings were not contested. As our Supreme Court recognized in *Lovering v. Erie Indemnity Company*, 195 A.2d 365, 367 (Pa. 1963):

> The appellant seems to be of the impression that a lawsuit is not "contested" unless there is a clashing of forensic swords or some kind of a legalistic pug[i]listic combat. The fact of the matter is that, once a Complaint is served on an individual in an adversa[r]y proceeding and the Court obtains jurisdiction over him; *that* individual becomes a defendant and thus the opposing half of a contest. The defendant's absence from court produces no situation different from that one where he makes his appearance but introduces no evidence because he has none.

Accordingly, we conclude that the Judgment was not entered as a result of Napa's default, and that it became final when it was not appealed.

We agree with the City that Napa was required to meet the "extraordinary cause" standard in order to have the Judgment opened and that it failed to do so. As the City observed, Napa failed to make any argument before the trial court or this Court that extraordinary cause warranted opening the Judgment. Thus, the argument has been waived. *See* Pa.R.A.P. 302(a) (issues not raised in the trial court are waived and cannot be raised for the first time on appeal). Moreover, even if we were to address the issue, the record clearly does not reflect any fraud or circumstances "so grave or compelling as to constitute 'extraordinary cause' justifying intervention by the court." *Simpson*, 504 A.2d at 337 (quoting *Klugman v. Gimbel Brothers, Inc.*, 182 A.2d 223, 225 (Pa. Super. 1962)).

21

## CONCLUSION

The Judgment entered pursuant to the City's Praecipe to Enter Judgment is not a default judgment; rather, it is a final judgment entered following a contested hearing on the merits of the City's Complaint. The Judgment became final upon failure to appeal and could not be opened absent "extraordinary cause" warranting the trial court's intervention. Because Napa failed to make any argument concerning "extraordinary cause" before the trial court, the issue has been waived.

Accordingly, the trial court's order denying Napa's Petition to Open is affirmed, albeit on different grounds.[8]

_____
MICHAEL H. WOJCIK, Judge

---

[8] It is well settled that we may affirm the trial court's order on different grounds. *See Germantown Cab Co. v. Philadelphia Parking Authority*, 158 A.3d 731, 732 n.1 (Pa. Cmwlth. 2017).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia          :
                              :
            v.                : No. 40 C.D. 2023
                              :
1531 Napa, LLC,               :
                              :
                Appellant     :


**O R D E R**


AND NOW, this 6<u>th</u> day of <u>March</u>, 2025, the order of the Court of Common Pleas of Philadelphia County entered on December 12, 2022, is AFFIRMED.


_____
MICHAEL H. WOJCIK, Judge